## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ELIZABETH PERRY,**                    **Case No. 1:21-CV-104**

                    **Plaintiff,**

    **-vs-**                    **JUDGE PAMELA A. BARKER**

**NORFLEET TRANSPORTATION, LLC,**
**ET AL.,**                    **MEMORANDUM OF OPINION AND**
                    **ORDER**
                    **Defendants.**

This matter is before the Court on the Motion to Remand to State Court of Plaintiff Elizabeth Perry filed on February 1, 2021 ("Plaintiff's Motion").  (Doc. No. 4.)  On February 16, 2021, Defendants Norfleet Transportation, LLC, Donald H. Rodgers, and Quentin D. Campbell filed their Memorandum Contra Plaintiff's Motion ("Defendants' Opposition").  (Doc. No. 5.)  Plaintiff did not file a Reply in support of Plaintiff's Motion.  Plaintiff's Motion is now ripe for a decision.  For the reasons set forth below, Plaintiff's Motion is DENIED.

## I.    BACKGROUND

### A.  The State Court Action

On March 19, 2020, Plaintiff Elizabeth Perry ("Plaintiff") filed a Complaint in the Cuyahoga County Court of Common Pleas, Case No. CV-20-931207, naming Norfleet Transportation, LLC ("Norfleet"), Donald H. Rodgers ("Rodgers"), and Quentin D. Campbell ("Campbell") as defendants, alleging that she sustained personal injuries as a result of a motor vehicle accident that occurred on March 21, 2018 as a result of the negligence, recklessness, and/or statutory violations of Defendants ("the State Court action").  (Doc. No. 1-2.)  In addition to a prayer for compensatory damages, the

Complaint includes a prayer for attorneys' fees and for punitive damages because the driver of the semi-tractor trailer, Campbell, allegedly fled the scene of the accident.  (*Id.*)

On May 15, 2020, Defendants filed an Answer to the Complaint in the State Court action, after Plaintiff perfected service on Rodgers and Campbell on April 15, 2020 and March 27, 2020, respectively.  (Doc. No. 1-3; Doc. No. 1-5, PageID # 34; Doc. No 1-4, PageID # 31.)  Service was perfected on Norfleet on September 14, 2020.  (Doc. No. 1-4, PageID # 31.)  On July 20, 2020, Plaintiff's counsel served Defendants' counsel with Plaintiff's responses to Interrogatories and a Request for Production of Documents.  (Doc. No. 1-6.)

Plaintiff was 22 at the time of the accident.  (Doc. No. 1-6, PageID # 37.)  In Response to Interrogatory Number 4 asking Plaintiff to describe her injuries alleged to have been sustained in the accident, Plaintiff stated that she "sustained injuries to my neck, pain by my left shoulder blade and injuries to my back, including a herniated disc.  See enclosed medical records for more detailed information …"  (Doc. No. 1-6, PageID # 38-39.)  In Response to Interrogatory Number 7 asking Plaintiff that if she was claiming she was not fully recovered, to state her current complaints or injury she was still suffering from, Plaintiff described monthly flare-up pain in her left shoulder making it uncomfortable to sleep, discomfort from long car rides, and anger and anxiety at "what happened, the driver fleeing the scene and [her] future medical condition due to the herniated disc."  (Doc. No. 1-6, PageID # 40.)  In Response to Interrogatory Numbers 9 and 10, Plaintiff stated that at the time of the accident, Plaintiff was employed as a Cleveland Market Service Manager for Overdrive Expresso working 40 hours plus a week and missed one day of work as a result of the accident.  (Doc. No. 1-6, PageID # 41.)

2

"Plaintiff's Medical Treatment and Damages Audit" indicated that Plaintiff's medical treatment consisted of an emergency room visit on March 24, 2018, a Cat Scan of her neck, two doctors' visits, and seven physical therapy visits between April 16, 2018 and May 9, 2018; and her medical bills totaled $8,901.00. (Doc. No. 1-7.)

By email to Defendants' counsel dated September 15, 2020, Plaintiff's counsel made a settlement demand of $1,000,000 to resolve the case, and in support thereof, quoted from Plaintiff's emergency room Cat Scan report that included findings of "a focal central disc herniation at C3-4 indenting the ventral thecal sac which may abut the ventral cord surface. Otherwise, no significant disc protrusion or degenerative disc disease." (Doc. No. 1-9, PageID # 65.) Plaintiff's counsel asserted that "[t]his is a permanent injury [to his 22 year old client] and she will only get worse as she ages," and "[t]he fear of what will develop and how her life will be affected is a major concern." (*Id.*) Plaintiff's counsel also stated that "[o]n top of the injury, she has a claim for punitive damages in that Mr. Campbell fled the scene and she had to chase him." (*Id.*)

On October 28, 2020, Defendants' counsel conducted the deposition of Plaintiff during which Plaintiff confirmed the information set forth in her Response to Interrogatories and/or testified in relevant part that: the only day she took off work because of the accident was the day following it (Doc. No. 1-8, PageID # 62); since May 9, 2018, Plaintiff has not received any medical treatment and has not needed any medication for the injuries she sustained in the accident (*Id.* PageID # 63); as of the date of her deposition, Plaintiff had no scheduled appointments for the herniated disc she claims resulted from the accident (*Id.* PageID # 64); Plaintiff has been asymptomatic except for occasional flare ups if she does not keep up with her home exercises (*Id.* PageID # 63); as the service manager and equipment technician for Overdrive Expresso, Plaintiff works fifty hours a week and typically

3

drives every day or most days in her Northeast Ohio territory (*Id.* PageID # 60); and Plaintiff's plan is to continue to do home exercises, see if it continues to feel fine and live with an occasional flare-up, and hope it does not get worse (*Id.* PageID # 64).

On December 28, 2020, Plaintiff's counsel transmitted to Defendants' counsel via email, an Independent Medical Report ("IME") authored by Dr. D. Philip Stickney wherein Dr. Stickney opined in relevant part that while "no arthritic changes were seen on the recent MRI, however, these herniations have had sufficient time to resorb and heal and have now become chronic and permanent over twenty four months since the injury . . . the herniations at C3-4 and C6-7 are now considered permanent and substantial . . . and in time will produce degenerative changes."  (Doc. No. 1-10, PageID # 70.)

### B.  Removal to this Court

On January 14, 2021, Defendants filed their Notice of Removal of the State Court action to this Court wherein they asserted that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy more than likely exceeds the sum or value of $75,000 exclusive of interest and costs.  (Doc. No. 1.)  Defendants also asserted that the removal was timely under 28 U.S.C. § 1446(b)(3), because Defendants had filed their notice of removal "within 30 days after their receipt, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

On February 1, 2021, Plaintiff's Motion was filed.  Therein, Plaintiff does not dispute that complete diversity exists between the parties or that it is more likely that the amount in controversy exceeds $75,000 exclusive of interest and costs.  What Plaintiff does dispute or argue is that pursuant

4

to 28 U.S.C. § 1446(b)(3), removal was untimely and therefore, the case should be remanded to state court.  Plaintiff's counsel attached an Affidavit to Plaintiff's Motion, averring that on the date of Plaintiff's deposition or October 28, 2020, he and Defendants' counsel had a private conversation during which Plaintiff's $1,000,000 demand was discussed and "[a]fter scoffing at the demand, Defense counsel stated, 'disc cases typically settle between $75,000 and $150,000'" and Plaintiff's counsel responded "'not this case' based upon the injury being permanent, Ms. Perry's fear of the future and the punitive damages claim with attorney fees for the driver fleeing the scene."  (Doc. No. 4-1, PageID # 82.)

According to Plaintiff, and based upon Plaintiff's settlement demand of $1,000,000 in conjunction with Defendants having Plaintiff's Responses to Interrogatories and her medical records confirming a disc herniation with impingement on the thecal sac, the deposition of Plaintiff and the conversation between Plaintiff's counsel and Defendant's counsel on October 28, 2020, Defendants had "solid and unambiguous information" that the amount in controversy exceeded $75,000 and the case was removable no later than October 28, 2020 and therefore, Defendants had 30 days from that date or until November 27, 2020 to remove the case to this Court.  Plaintiff contends that since Defendants did not file their Notice of Removal until January 14, 2021, the Notice of Removal was not filed timely and the case should be remanded to state court pursuant to 28 U.S.C. § 1446(b)(3).

Defendants counter by asserting that Defendants did not have the required "solid and unambiguous information" that this case was removable until December 28, 2020, when Plaintiff's counsel provided Defendants' counsel with the IME report of Dr. Stickney, and therefore, Defendants were timely in filing their Notice of Removal on January 14, 2021.

Plaintiff did not file a reply in support of Plaintiff's Motion, and therefore, the Court is left with only the information and evidence on the record before it.

## II.    ANALYSIS

Relevant to the issues presented by Plaintiff's Motion is the following summary set forth by the Sixth Circuit in *Berera v. Meza Medical Group, PLLC*, to wit:

> A defendant removing an action to federal court must file a notice of removal.  [28 U.S.C.] § 1446(a).  Generally, the defendant must file the notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  *Id.* § 1446(b)(1).  The 30-day period in 1446(b)(1) starts to run only if the initial pleading contains "solid and unambiguous information that the case is removable."  *Holston v. Carolina Freight Carriers Corp*., No 90-1358, 1991 WL 112809, at *3 (6th Cir. June 26, 1991) (per curiam).  If the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal "within 30 days after receipt … of a copy of an amended pleading, motion, order or other paper" that contains solid and unambiguous information that the case is removable.  *See* 28 U.S.C. § 1446(b)(3); *see also Walker v. Philip Morris USA, Inc*, 443 Fed.Appx. 946, 950 (6th Cir.2011).  Section 1446(b)'s requirement of solid and unambiguous information is akin to actual notice.  *Cf. Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir.2002) (citation omitted) (internal quotation marks omitted).  ("The intent of § 1446(b) is to make sure that a defendant has an opportunity … to remove upon being given notice in the course of the case that the right exists."); Charles Alan Wright et al., 14C *Federal Practice and Procedure* § 3731 (4th ed. 2009) ("The statute requires 'an amended pleading, motion, order, or other paper' to act as a trigger to commence the running of a new 30-day period once the defendant has received actual notice, through one of the documents described in Section 1446(b), that a previously unremovable case has become removable.").

*Berera v. Meza Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015).

In *Berera*, the Sixth Circuit more fully expounded upon the meaning of the term or phrase "other paper" as used in § 1446(b).  While acknowledging that as a general matter "documents such as deposition transcripts, answers to interrogatories and requests for admissions, … amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys," and "a plaintiff's responses to deposition questioning" may constitute "other

6

paper," the Court found that the hearing transcript at issue therein constituted an "other paper," giving weight to the fact that such hearing transcript involved "oral statements made in the courtroom during the course of the action." *Id.* at 365.

Thus, as an initial matter, the Court concludes that an off-the-record conversation had between counsel for the parties, whether before, during or after Plaintiff's deposition, does not constitute an "other paper," and an affidavit by one attorney setting forth averments regarding such conversation, does not constitute an "other paper" within the meaning of 28 U.S.C. § 1446(b).  Therefore, the Court is not considering the conversation had between counsel on the date of Plaintiff's deposition or October 28, 2020 in evaluating Plaintiff's Motion.

Accordingly, the question or issue is whether Defendants' receipt of Plaintiff's Responses to Interrogatories and her medical records, the $1,000,000 settlement demand to include punitive damages, and Plaintiff's deposition on October 28, 2020 together amount to or constitute "solid and unambiguous information" that the case was removable as of October 28, 2020.  The Court finds that it does not.

"When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered ... unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir.2001) (quoting *Holley Equip. Corp. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir. 1987)).  As set forth in Plaintiff's counsel's September 15, 2020 email or settlement demand, Plaintiff's punitive damages claim rests upon the allegation that Campbell fled the scene of the accident.  However, under Ohio law, this allegation,

7

standing alone, is not sufficient to establish actual malice under R.C. § 2315.21(C)(1).[1]  *Terek v. Finkbiner*, No. 3:13-cv-1381, 2015 WL 5542535 (N.D. Ohio Sept. 18, 2015); *Kuebler v. Gemini Transportation*, No. 3:12-cv-114, 2013 WL 6410608, at *6 (S.D. Ohio Dec. 9, 2013).  Thus, it is apparent to a legal certainty that under Ohio law, punitive damages cannot be recovered by Plaintiff absent something more than her allegation that Campbell fled the scene of the accident.  Therefore, this allegation or assertion that forms the basis for her prayer for punitive damages in Plaintiff's Complaint, and, in part, Plaintiff's counsel's demand of $1,000,000 to resolve the matter, will not be considered when evaluating whether Defendant timely filed its Notice of Removal with this Court.

Thus, in the end, the Court is evaluating whether evidence of medical bills totaling $8,901.00, for an emergency room visit to include a CAT scan that documented a focal central disc herniation at C3-4 indenting the ventral thecal sac, 2 doctors' visits, and 7 physical therapy visits, medical treatment spanning a period of less than two months immediately after the accident with no future medical treatment scheduled as of October 28, 2020, no use of any pain relievers or medication after May 9, 2018, one day of lost wages with the ability to work 50 hours a week, occasional flare-ups of shoulder pain relieved by home exercises, and no medical report documenting permanency or expected surgery or any other anticipated future medical expenses and lost income resulting therefrom, even with a written settlement demand of $1,000,000, constitutes "solid and unambiguous information" that the case was removable as of October 28, 2020.  The Court finds that it does not.

---

[1] As the Court explained in *Terek v. Finkbiner*, No. 3:13-cv-1381, 2015 WL 5542535, at *3 (N.D. Ohio Sept. 18, 2015): "Because R.C. § 2315.21 does not define malice, the Supreme Court of Ohio applies the definition of actual malice set forth in *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), to punitive-damage claims.  *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440, 659 N.E.2d 1242 (1996).  Thus, for purposes of punitive damages, malice is '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.' *Preston*, 32 Ohio St.3d at 334, 512 N.E.2d 1174.  A party seeking punitive damages bears the burden of proving malice with clear and convincing evidence.  R.C. § 2315.21(D)(1)(4)."

*See Allen v. Williams*, No. 20-860, 2020 WL 7631452 (M.D. La. Dec. 21, 2020) (allegations of multiple herniated discs, allegations of continued treatment as of the time of the filing of the complaint, but no details regarding the extent of medical treatment, whether injuries are permanent, the plaintiffs' prognoses and recommended future treatment including any surgery recommendation not sufficient to find that the $75,000 jurisdictional limit was met); *Davis v. Southern Farm Bureau Cas. Ins. Co.*, No. 20-322, 2020 WL 3000803 (M.D. La. June 4, 2020) (past medical expenses of $30,467 for back, neck, and shoulders injuries, including a sprain/contusion of the cervical and lumbar spine and shoulders, low back pain, herniated cervical disc, a herniated lumbar disc, a bulging disc, and bilateral shoulder degenerative joint disease, and a small partial tear of the supraspinatus tendon in the left shoulder, medical records showing Plaintiff's receipt of physical therapy treatments and medication, MRI's, epidural steroid injections, bilateral medial branch blocks, and a bilateral lumbar rhizotomy, and records reflecting the Plaintiff's inability to return to work for a period of time, but no indication of any settlement demand made, found insufficient to demonstrate the $75,000 jurisdictional requirement was met); *Alexander v Volume Transportation, Inc.*, No. 19-330, 2019 WL 6501507 (M.D. La. Nov. 8, 2019) (medical records indicating that the plaintiff suffered from an L2-3 herniated disc and an L3-4 posterior bulging disc, was recommended for epidural steroid injection, was diagnosed with leg and hand radiculopathy, incurred medical expenses of $6,006.60 at the time of removal, but no evidence of multiple herniated discs, that surgery was recommended or that the plaintiff had made a significant settlement demand found insufficient to satisfy the $75,000 amount in controversy requirement).

And to the extent that the instant matter, as distinguished from the cases cited above, does involve a settlement demand, the Court is persuaded by the cases cited by Defendants for the assertion

9

that while it constitutes some evidence that the plaintiff seeks more than $75,000, a settlement demand is not dispositive or determinative of the amount in controversy. *Wilcox v. Cedar Point, Inc.*, No. 3:12-cv-2103, 2013 WL 4460144, at *2 (N.D. Ohio Jan. 3, 2013). *See May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 949 (E.D. Ky. 2010); *Smith v. Phillips & Jordan, Inc.*, No. 10–134–ART, 2011 WL 250435, at *2 (E.D. Ky. Jan. 24, 2011).

Indeed, although the CAT scan documented or revealed a focal central disc herniation at C3-4 indenting the ventral thecal sac, in Dr. Stickney's IME report, his opinion that Plaintiff's herniations at C3-4 and C6-7 "have now become chronic and permanent over twenty four months since the injury" and therefore, "are now considered permanent and substantial" was based upon the fact that it had been over twenty-four months since the injury, and therefore, "these herniations have had sufficient time to resorb and heal." In other words, because they had not resorbed and healed over the more than twenty-four month period of time since the accident, they were considered permanent and substantial, indicating that if they had resorbed and healed, they would not be permanent and substantial.

## III.  CONCLUSION

For the reasons set forth above, the Court finds that Defendants timely removed the instant matter to federal court. Accordingly, Plaintiff's Motion is DENIED.

**IT IS SO ORDERED.**


       *s/Pamela A. Barker*
       PAMELA A. BARKER
Date:  March 29, 2021       U. S. DISTRICT JUDGE